DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAMANTHA SCHOTT BENNETT (NYBN 5132063)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
samantha.schott@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DONALD GREGORY MURRAY, JR.,<br><br>Defendant. | NO. 4-20-71869 MAG<br><br>NOTICE OF MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES' MOTION TO REVOKE MAGISTRATE COURT'S PRE-TRIAL RELEASE ORDER FOR DEFENDANT DONALD GREGORY MURRAY, JR.<br><br>Hearing Date: January 5, 2021<br>Hearing Time: 2:30 p.m.<br>Court: Hon. Edward J. Davila |

# TABLE OF CONTENTS


**I. INTRODUCTION....................1**

**II. FACTUAL AND PROCEDURAL HISTORY....................2**

**A. Defendant's Criminal History and Probation Violations....................2**

**D. Detention Hearing....................3**

**III. DEFENDANT IS A DANGER TO THE COMMUNITY AND SHOULD BE DETAINED PENDING TRIAL....................4**

**A. Standard of Review....................4**

**B. Relevant Law....................4**

**C. Defendant is a Danger to the Community, and No Condition or Combination of Conditions Can Mitigate That Risk....................4**

**1. The nature and circumstances of the offense militate in favor of detention....................5**

**2. The weight of the evidence of the defendant's guilt is strong....................5**

**3. The defendant's history and characteristics show he cannot be trusted and that he is a danger to the community....................6**

**D. The Conditions of Release Ordered by the Magistrate Judge Are Insufficient to Ensure the Safety of the Community....................9**

**IV. CONCLUSION....................11**

# TABLE OF AUTHORITIES

## CASES

*United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991) .................. 6

*United States v. Hir*, 517 F.3d 1081 (9th Cir. 2008) .................. 5

*United States v. Koenig*, 912 F.2 1190, 1192 (9th Cir. 1990) .................. 4

*United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985) .................. 4

*United States v. Torres*, 911 F.3d 1253 (9th Cir. 2019) .................. 5

*United States v. Windsor*, 785 F.2d 755 (9th Cir. 1986) .................. 4

## STATUTES

18 U.S.C. § 3142(c) .................. 10

18 U.S.C. § 3142(f) .................. 4

18 U.S.C. § 3142(g) .................. 5, 6

## NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at the time and place specified above, or as soon thereafter as the matter may be heard, the United States will move and does hereby move this Court for entry of an order revoking the release order and detaining defendant Donald Gregory Murray, Jr., pending trial. The United States further moves this Court to stay the release order until such time as the motion can be heard.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff United States of America, by and through its counsel of record, hereby moves this Court for revocation of Magistrate Judge Sallie Kim's order granting pretrial release to defendant Donald Gregory Murray, Jr. (defendant or Murray). Defendant is charged by criminal complaint with being a Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922(g)(1). The government has demonstrated by clear and convincing evidence that the defendant is a danger to the community, and the defendant should be ordered detained pending trial.

As more fully explained below, defendant should be detained pending trial because: (1) the defendant has three recent prior felony convictions, including two for firearms possession; (2) the defendant was on probation at the time of this offense, and at the time of his two most recent felony convictions; (3) the defendant has recently posted pictures of firearms on Instagram, including a threat to shoot rival gang members with one such image, and appears to have carried a firearm in Oakland earlier this month; (4) in the instant matter, the defendant possessed three firearms, including one loaded with 20 rounds, and a ghost gun, and told agents that he would continue to carry firearms; and (5) the surety is insufficient and cannot exercise sufficient moral suasion over the defendant to mitigate the risks that he poses.

The defendant has repeatedly shown that he puts his own interests before those of society. The facts and circumstances of the defendant's history and characteristics, and the facts of the instant case,

show him unequivocally to be a danger to the community, and that no condition or combination of conditions can reasonably assure the safety of the community if he were to be released. Defendant must therefore be detained pending trial.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Defendant's Criminal History and Probation Violations

The defendant is only 22 years old, but he has already sustained one wardship and three adult felony convictions. As noted in the Pretrial Services Report, the defendant sustained a wardship felony conviction in February 2015 for Robbery. Pretrial Services Report ("PSR"), p. 4. He was sentenced to a short time in jail and 40 months' probation, but less than two years later, in January 2017, the defendant was charged and subsequently convicted of Carrying a Concealed Firearm. Conviction records from the Alameda County Superior Court – which have been provided to the defendant – show that the defendant was initially sentenced to 190 days' jail and five years' probation in April 2017, but he repeatedly violated that probation, and was resentenced in October 2019 (following his subsequent felony convictions) to 16 months' prison.

While on probation for this felony offense, the defendant was arrested and charged with Felony Evasion in October 2018. The defendant was sentenced in October 2019 to three years' probation (and resentenced to 16 months' prison for his 2017 conviction, as described above). But only two months later, on December 10, 2019, the defendant was <u>again</u> arrested, while on probation, in possession of a firearm. The defendant was convicted of being a Felon in Possession of a Firearm and on June 8, 2020, was sentenced to three years' probation.[1]

The defendant's probation conditions – and his three adult felony convictions – prohibited the defendant from possessing weapons of any kind, and he was admonished against possessing weapons as recently as June 2020. Yet six months later, the defendant possessed three guns, two of them loaded, on December 16, 2020, in direct violation of the law <u>and</u> his probation conditions.

///

---

[1] This conviction does not appear to be reflected in the Pretrial Services Report, and does not appear on the defendant's criminal history report because of a delay in reporting convictions from Alameda County. Certified conviction records for this conviction have been provided to the defendant.

**B. <u>Offense Conduct</u>**

On December 16, 2020, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) executed a federal search warrant at the defendant's home in Oakland, California. Affidavit of ATF Special Agent Andrew Balady in Support of Criminal Complaint ("Compl."), ¶ 12. As described in the complaint affidavit, the defendant had posted multiple images on Instagram, depicting himself in possession of firearms, and was seen outside of a store in Oakland in possession of a firearm less than two weeks prior. Compl., ¶¶ 9-11. On December 16, agents recovered a backpack with the defendant's name on the strap. Compl., ¶ 12. Inside the defendant's backpack, agents found three firearms: a Glock Model 23, .40 S&W pistol bearing serial number SRE276, loaded with (20) .40 S&W cartridges; a Romarm, Model Champion 2007 5.56x45mm pistol; and a privately manufactured .40 S&W pistol with no serial number – a "ghost" gun – loaded with eight .40 S&W cartridges. *Id*.

The defendant was arrested, and a Criminal Complaint and arrest warrant were issued on December 17, 2020.

**D. <u>Detention Hearing</u>**

Defendant made his initial appearance in the Northern District of California on December 17, 2020. Defendant was interviewed by Pretrial Services, which recommended that defendant be detained as a danger to the community, and that no conditions could mitigate the risk. A detention hearing was held on December 29, 2020, before the Honorable Sallie Kim, United States Magistrate Judge. At the detention hearing, the government argued that no condition or combination of conditions could reasonably assure the safety of the community, based on the defendant's characteristics and criminal history, and the nature and circumstances of the instant case. Judge Kim ordered defendant released to a halfway house on a $25,000 unsecured bond co-signed by the defendant's girlfriend of two months, but stayed that order for 24 hours until December 30, 2020, at approximately 11:00 a.m.

///

///

///

## III. DEFENDANT IS A DANGER TO THE COMMUNITY AND SHOULD BE DETAINED PENDING TRIAL

### A. Standard of Review

"[A] district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's factual findings." *United States v. Koenig*, 912 F.2 1190, 1192 (9th Cir. 1990). Thus, this Court must make its own independent determination regarding defendant's detention status.

### B. Relevant Law

The Bail Reform Act of 1984 (the Act) permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

The Ninth Circuit has identified several relevant statutory factors in determining whether pretrial detention is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol use and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by defendant's release. 18 U.S.C. § 3142(g); *United States v. Windsor*, 785 F.2d 755 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1407.

### C. Defendant is a Danger to the Community, and No Condition or Combination of Conditions Can Mitigate That Risk

Defendant is a felon three times over, who sustained each of his adult felony convictions while on probation for another offense. He has repeatedly carried and flaunted firearms, and he has shown

himself to be unwilling and unable to comply with community supervision, continuing to engage in criminal activity while on probation. The statutory factors contained in 18 U.S.C. § 3142(g) clearly establish that defendant is a danger and should be detained pending trial.

**1. <u>The nature and circumstances of the offense militate in favor of detention</u>**

Defendant's offense conduct here is incredibly serious. The defendant was found in possession of <u>three</u> firearms: a Glock Model 23 pistol, with a weaponlight attached, loaded with 20 rounds of ammunition; a Romarm Model Chamption 2007 AK-style pistol, and a loaded "ghost" gun. As described further herein, the defendant had been posting pictures of himself in possession of guns on Instagram prior to the search warrant, and he had carried – and dropped – an AR-style pistol outside of a store in Oakland earlier this month. Given his three prior adult felony convictions, the defendant was prohibited from possessing a gun or ammunition, and yet the defendant had <u>three</u> guns, two of them loaded, at the time of the execution of the search warrant, all while on felony probation.

The seriousness of the charged offense is reinforced by statutory mandate. Congress passed Section 922(g) to "disarm groups whose members Congress believes are unable or unwilling to conduct themselves in conformity with the responsibilities of citizenship." *United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (internal quotation marks omitted). That statutory goal bears directly on the question of detention here because (as demonstrated by his history and failure to comply with probation) the defendant chooses to live by his own rules, not in "conformity with the responsibilities of citizenship."

**2. <u>The weight of the evidence of the defendant's guilt is strong</u>**

As for the weight of the evidence, under § 3142(g)(2), this factor also favors detention because the evidence of the defendant's guilt is overwhelming. Here, three firearms were recovered during the execution of a federal search warrant at the defendant's home. The guns were kept in a backpack with "Donald M." written on the strap. The defendant's family denied any connection to the backpack or firearms. While this factor is deemed the least important by case law, the judge is still "require[d]" to consider it, and it can help establish dangerousness. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that

the defendant would pose a danger if released). Likewise, overwhelming evidence of the defendant's guilt "makes it more likely that he will flee," since the defendant has less incentive to stick around and litigate the case. *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991).

**3. The defendant's history and characteristics show he cannot be trusted and that he is a danger to the community**

The defendant's history and characteristics, and the clear danger he poses to the community, considered under §§ 3142(g)(3) and 3142(g)(4), strongly favor detention. The defendant is a self-admitted gang member, associating with the CASE gang, the 69th Village gang, and most recently Murder Dubbs, which he used as the "location tag" for the December 10, 2020 photo on Instagram. Compl. ¶ 10. While only 22 years old, the defendant has four felony – three adult – convictions, including two convictions for possessing a firearm. Upon each conviction, the defendant was told that he was prohibited from possessing firearms. Yet the defendant refused to heed the court's admonitions and to follow the law. Instead, while on probation, he chose to continue carrying firearms.

On November 6, 2020, he posted a picture on his publicly viewable Instagram account, which was included the affidavit attached to the criminal complaint. Compl., ¶ 9. In the picture, which is copied to the right of this paragraph, the defendant is holding a firearm in each hand – including what ATF Special Agent Balady believes to be a "ghost" AR-style pistol with a 30-round magazine. *Id.* But two firearms was not enough – the defendant also had one pistol in his pocket, and another sticking out of his waistband. *Id.*




///

///

///

On December 4, 2020, the defendant stood outside of a store in Oakland with other people, while carrying another AR-style pistol. Compl., ¶ 11. Surveillance footage from the store shows that the defendant unzipped his jacket, and the AR-style pistol fell to the ground. The defendant grabbed the AR-style pistol and held it before tucking it into his waistband.

On December 10, 2020, the defendant posted two pictures to his Instagram account, depicted in the complaint affidavit and copied below, this time tagging his location as "Murder Dubbs." Compl., ¶ 10. In these photos, the defendant is carrying what appears to be a Glock pistol with an extended magazine and a weaponlight – just like the one he possessed in the instant case. *Id*. The defendant captioned the photos "Catch a opp [smiley face] in traffic [exclamation points] this 23 get to jumping." *Id*. Based on his training and experience, Agent Balady believes that the defendant was writing that he was carrying a Glock Model 23, and that "if he were to see a rival gang member in traffic, that he would use his firearm and shoot at his rival." *Id*.









And on December 16, 2020, during the execution of a federal search warrant, the defendant had three firearms in his possession – that same Glock 23 with the weaponlight, depicted in the complaint affidavit and copied below, loaded with 20 rounds of ammunition, an AK-style pistol, and a ghost gun. Compl., ¶ 12. The defendant kept these three guns together in a backpack with his name on the strap. *Id*.

In a post-arrest interview, the defendant denied possessing the backpack or the firearms. The defendant stated in substance to the interviewing agent that "of course" he carries a gun, because there were people that wanted to kill him. But the defendant's conduct makes clear that he did not carry these firearms for protection. He boasted about them, and flaunted them, and threatened rivals with them.

The defendant's conduct is particularly concerning given the dramatically increased public safety threat the Oakland community has suffered this year, not only due to the pandemic. Oakland is suffering from a drastic increase in gun violence this year. As of December 27, 2020, firearm assaults and homicides were up 65% year-to-date from 2019 (firearm assaults alone were up 71%). *See* Oakland Police Department, "Weekly Crime Report-Citywide 21 Dec.-27 Dec., 2020," https://cityofoakland2.app.box.com/s/xqloqg6rpaljxz6h0cajle6skmoea5ct/file/758620238219 (accessible from https://www.oaklandca.gov/resources/oakland-crime-statistics, last accessed December 29, 2020). Shootings of occupied homes or vehicles were up 68%, and shootings of unoccupied homes or vehicles were up 79% year-to-date (these figures appear to be calculated separately from the "firearms assaults"

on persons). *Id*. By comparison, non-firearm aggravated assaults were only up 3%, and robberies were down a total of 16%. The defendant's conscious choice to continue carrying firearms in this community already suffering under the stress of so much violence, and his choice to brag about possessing firearms, and to threaten to shoot rivals, demonstrate the outsized danger the defendant poses to the community in which he lives, and to which he could easily return if released under the current conditions. There is nothing in the record that would permit this Court to believe that the defendant would abide by any programming, curfew, or other stringent conditions of release now to mitigate this risk.

The defendant argued at the detention hearing that his probation officer confirmed that he has been done well on probation and this necessarily means that he can succeed on pretrial release. The defendant's probation officer did indeed note to Pretrial Services that the defendant was "performing well" but that "his supervision requirements were minimal due to COVID-19." PSR, p. 7. The government submits that in fact the defendant's conduct in this case, and his history, demonstrate his total lack of amenability to supervision. While he is perhaps able to abide by "minimal" terms of supervision, the defendant possessed three firearms this month <u>while on probation</u>. The defendant posted photos in possession of firearms <u>while on probation</u>. The defendant carried a firearm outside of a store in Oakland <u>while on probation</u>. And the defendant's history makes this even clearer: the defendant sustained <u>each</u> of his adult felony convictions <u>while on probation</u> for other offenses. The most fundamental tenets of community supervision are to refrain from possessing firearms, and to refrain from committing new crimes while on supervision, yet the defendant has repeatedly chosen to ignore these conditions. The defendant's history thus demonstrates that no condition of supervision can reasonably mitigate the danger he poses to the community.

### D. <u>The Conditions of Release Ordered by the Magistrate Judge Are Insufficient to Ensure the Safety of the Community</u>

The Magistrate Judge ordered the defendant released to a halfway house, on a $25,000 unsecured bond, "co-signed" by defendant's girlfriend of two months, who resides in Merced, and has no significant assets or property. Both common sense and the law demonstrate this release proposal to be inadequate to safeguard the community.

First and foremost, a residential reentry center – or "halfway house" – is not a secure custodial facility. Even on "lockdown" – which was not ordered here – residents of the facility can leave any time they want. The facility staff will not prevent residents from leaving, and their conduct outside the halfway house is not monitored. When a defendant absconds from the halfway house, Pretrial Services might be alerted, but no one follows the defendant into the community to see where he has gone. Moreover, since the defendant was not ordered to be on "lockdown," the defendant would be allowed to leave the halfway house at any time. He would be able to return to his home and his neighborhood in Oakland where he committed these crimes, and could pick up a firearm undetected by the halfway house or Pretrial Services. No one would learn of any issues until the defendant failed to reappear at whatever time he was due back at the facility, which could be hours later.

Furthermore, the defendant's proposed "surety" is inadequate, and has neither the necessary assets nor sufficient moral suasion over the defendant to act a surety. According to information provided to the Pretrial Services Officer, the defendant has known the proposed surety, Ms. Knox, for two years, but they have only been in a relationship for the past two months. PSR, p. 2. Ms. Knox resides in Merced, California, approximately two to three hours away from Oakland, and makes $17 an hour, though her in-home care work appears to have been limited due to the pandemic. *Id.* The defendant, for his part, has no significant history of employment and no income or assets. PSR, p. 3.

Here, neither the surety nor the defendant have demonstrated that they have sufficient assets to support the $25,000 unsecured bond, as required by the Bail Reform Act. *See* 18 U.S.C. § 3142(c)(B)(xii) (release on bond permitted "with solvent sureties…[S]uch surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond"). Where neither defendant nor his surety would face any real financial repercussions were he to flee or commit another crime, defendant has no motivation to follow the court's directives.

Moreover, despite the relationship between the defendant and Ms. Knox, the defendant has been publicly carrying and flaunting firearms and engaging in this conduct for the apparent duration of their relationship. Yet, at best, Ms. Knox had no knowledge of his behavior – despite his social media postings – and at worst, turned a blind eye to it, and did not stop him from engaging in this exceedingly

dangerous conduct. There is no reason to believe that the proposed surety can now exercise sufficient moral suasion over the defendant to mitigate the significant danger he poses to the community.

## IV. CONCLUSION

For these reasons, the government respectfully requests that this Court find that the government has established by clear and convincing evidence that defendant is a danger to the community, and that there are no conditions or combination of conditions that will reasonably assure the safety of the community.

DATED: December 29, 2020

Respectfully Submitted,

DAVID L. ANDERSON
United States Attorney

______/S/____________________
SAMANTHA SCHOTT BENNETT
Assistant United States Attorney